**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION -- PIKEVILLE**

| | |
|---|---|
| M.L. JOHNSON FAMILY PROPERTIES, LLC, | CIVIL NO. 7:16-CV-6-KKC |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| RYAN ZINKE, SECRETARY OF THE INTERIOR, | |
| Defendant, | |
| and | |
| PREMIER ELKHORN COAL LLC, | |
| Defendant-Intervenor. | |

*** *** ***

A plot of land known as Tract 46 in Pike County, Kentucky has valuable coal and two owners who cannot agree on how it should be used. One cotenant, Pike-Letcher Land Company ("PLLC"), has conveyed the right to enter and surface mine coal to its affiliate Premier Elkhorn Coal LLC. The other cotenant, M.L. Johnson Family Properties, LLC, has not consented to mining. Over Johnson LLC's objection, Kentucky has granted Elkhorn a right of entry to surface mine Tract 46. Johnson LLC challenged that decision before the Secretary of the Interior and now seeks review of the administrative decision that permitted Elkhorn to commence mining operations. For the reasons discussed below, the Court affirms the Secretary's decision.

## I.  Statutory and Regulatory Framework

Coal companies must comply with certain minimum requirements before mining a surface estate. Those requirements are set forth in the Surface Mining Control and

Reclamation Act of 1977 ("SMCRA"). 30 U.S.C. § 1201 *et seq.* SMCRA's regulatory requirements are primarily implemented through a permitting regime. 30 U.SC. § 1256(a) ("[N]o person shall engage in or carry out on lands within a State any surface coal mining operations unless such person has first obtained a permit issued by such State pursuant to an approved State program or by the Secretary pursuant to a Federal program . . . ."). As § 1256(a) suggests, regulatory power under SMCRA is not solely vested in the federal government. Instead, states which "wish[] to assume exclusive jurisdiction over the regulation of surface coal mining" are invited to submit to the Secretary a state program "which demonstrates that such State has the capability of carrying out the provisions of this chapter and meeting its purposes." 30 U.S.C. § 1253(a). This system of "cooperative federalism" sets SMCRA as a national floor for regulation of surface mining, but permits state's to develop more demanding regulatory regimes. *Kentuckians for the Commonwealth v. U.S. Army Corps. of Eng'rs*, 746 F.3d 698 (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 289 (1981)). Once a state submits and receives approval of its state program, SMCRA's grant of "exclusive jurisdiction" means that state law, not federal law, governs surface mining within the state. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 295 (4th Cir. 2001); *see also In re Permanent Surface Min. Regulation Litig*, 653 F.2d 514, 519 (D.C. Cir. 1981) (en banc) ("[I]t is with an approved state law and with state regulations consistent with the Secretary's that surface mine operators must comply. Administrative and judicial appeals of permit decisions are matters of state jurisdiction in which the Secretary plays no role.") (internal citations omitted).

SMCRA's grant of exclusive jurisdiction to state regulatory authorities contains an important exception. The Office of Surface Mining Reclamation and Enforcement ("OSMRE") retains authority to conduct a federal inspection of an existing mine if (i) there is reason to believe a permitee is in violation of a state program requirement or permit condition, (ii)

OSMRE has provided notice of the suspected violation to the state, and (iii) the state fails to take corrective action or show good cause for the failure within ten days.[1] 30 U.S.C. § 1271(a)(1). If, after conducting an inspection, OSMRE determines that a permitee is in violation of a program requirement or permit condition, and that violation "creates an imminent danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources," the Secretary must "immediately order a cessation of surface coal mining" operations. *Id.* § 1271(a)(2).[2] A cessation order may only remain in effect until OSMRE "determines that the condition, practice, or violation has been abated, or until modified, vacated, or terminated by [OSMRE]." *Id.*; *see* 30 C.F.R. § 843.11(f).

Kentucky received the Secretary's approval of its state program in May 1982 and the Kentucky Department of Natural Resources and Environmental Protection was deemed the Commonwealth's regulatory authority for surface coal mining. 30 C.F.R. § 917.10; *see generally* Ky. Rev. Stat. Ch. 350; 405 Ky. Admin. Reg. Ch. 1-30. Kentucky's permitting requirements largely mirror those set forth in the federal statute and implementing regulations. *See* Ky. Rev. Stat. 350.060; 405 Ky. Admin. Regs. 8:001 *et seq.* Having had its state program approved, changes to Kentucky law or regulations that "affect the implementation, administration, or enforcement of the approved State program" cannot "take effect for purposes of a State program until approved as an amendment" by the Secretary. 30 C.F.R. § 732.17(b), (g).

---

[1] The ten day notification period is waived if "the person informing the Secretary provides adequate proof that an imminent danger of significant environmental harm exists and that the State has failed to take appropriate action." 30 U.S.C. § 1271(a)(1).

[2] If there is a violation that does not meet the standard for imminent danger to the public or significant imminent environmental harm, OSMRE must instead provide the operator a notice of the violation and a reasonable time for abatement. 30 U.S.C. § 1271(a)(3).

SMCRA sets forth the minimum national requirements for establishing a valid right of entry in order to receive surface mining permit approval:

> No permit or revision application shall be approved unless the application affirmatively demonstrates . . . that—
>
> (6) in cases where the private mineral estate has been severed from the private surface estate, the applicant has submitted to the regulatory authority--
>
> (A) the written consent of the surface owner to the extraction of coal by surface mining methods; or
>
> (B) a conveyance that expressly grants or reserves the right to extract the coal by surface mining methods; or
>
> (C) if the conveyance does not expressly grant the right to extract coal by surface mining methods, the surface-subsurface legal relationship shall be determined in accordance with State law: *Provided*, That nothing in this chapter shall be construed to authorize the regulatory authority to adjudicate property rights disputes.

30 U.S.C. § 1260(b)(6)(A)-(C). SMCRA's implementing regulation is substantively identical to the statutory language, but is restated to require the applicant to submit documentation that establishes a right to entry under each provision. 30 C.F.R. § 778.15.[3] Kentucky's analogous regulation is also restated in terms of the documentation requirements for an application. 405 Ky. Admin. Regs. 8:030 Sec. 4(1)-(3) (2014).[4] Most pertinent, subsection (C) requires the following documentation for severed estates:

> If the conveyance does not expressly grant the right to extract the coal by surface mining methods, a copy of the original instrument of severance upon which the applicant bases his right to extract coal by surface mining methods and documentation that under applicable state law, the applicant has the legal authority to extract the coal by those methods.

---

[3] For example, 30 U.S.C. § 1260(b)(6)(c) is restated as: "If the conveyance does not expressly grant the right to extract the coal by surface mining methods, documentation that under applicable State law, the applicant has the legal authority to extract the coal by those methods." 30 C.F.R. § 778.15(b)(3).

[4] Kentucky has since amended this regulatory provision and it now more closely mirrors the federal regulation. *See* 405 Ky. Admin. Regs. 8:030 Sec. 4 (2017); 80 Fed. Reg. 33,456 (June 12, 2015). When OSMRE issued the Termination Order it relied upon the 2014 regulatory provision. The ALJ also applied the 2014 version in his written decision. All citations to the regulation in this opinion refer to the 2014 version unless otherwise stated.

405 Ky. Admin. Regs. 8:030 Sec. 4(2)(c). The burden to establish compliance with these right of entry provisions falls squarely on the permit applicant. 30 U.S.C. § 1260(a) ("The applicant for a permit, or revision of a permit, shall have the burden of establishing that his application is in compliance with all the requirements of the applicable State or Federal program.").

## II. Factual and Procedural Background

The mineral and surface estates of Tract 46 in Pike County, Kentucky have been severed since the early 1900s. The mineral estate is owned by PLLC. The surface estate, which consists of approximately 450 acres, was previously owned by M.L. Johnson, who left an undivided interest to each of his eight heirs. Two of the heirs conveyed their interests to PLLC, while five transferred theirs to Johnson LLC. By fall 2014, the surface estate was owned collectively by Johnson LLC (62.5%), PLLC (25%), and the eighth heir (12.5%) as tenants in common.[5] PLLC entered into an Original Right of Entry Agreement in 1995, and an Amended Right of Entry Agreement in 2013 with its affiliate Elkhorn, granting it the right to enter and conduct surface mining operations. Johnson LLC has not consented to surface mining on Tract 46.

The Kentucky Cabinet first issued Elkhorn a permit for surface mining operations on Tract 46 in 2003. Elkhorn subsequently sought approval of Amendment #1 to increase the number of acres covered by the permit.[6] The Cabinet determined that Elkhorn had demonstrated a right of entry based upon the consent of PLLC and the holding of the Kentucky Court of Appeals in *Johnson v. Envtl. & Pub. Prot. Cabinet*, 289 S.W.3d 216 (Ky.

---

[5] While the administrative review process was ongoing, the eighth heir sold her 12.5% share of the surface estate to Elkhorn. Today, Elkhorn owns 37.5% of the surface estate.

[6] Elkhorn's original permit authorized mining on a total of 370.8 acres, only 6 of which are within Tract 46. Amendment #1 added 179.6 acres to the permit area, including 61 acres within Tract 46.

Ct. App. 2009). Certain Johnson heirs initially challenged Amendment #1 in Kentucky's Office of Administrative Hearings on the basis that not all cotenants consented to surface mining, but the heirs ultimately dismissed that appeal with prejudice. Instead, Johnson LLC initiated a citizen suit pursuant to 30 U.S.C. § 1270(a) in this Court. That suit sought an injunction to compel the Secretary to inspect Elkhorn's permit, alleging the Cabinet's permit approval violated 30 U.S.C. § 1260(b)(6)(A) because Elkhorn did not have the written consent of all surface cotenants, and a preliminary injunction to stop surface mining operations on Tract 46. Compl., *M.L. Johnson Family Properties, LLC v. Jewell*, No. 14-CV-78-ART, ECF No. 1 (E.D. Ky. 2014).

While Johnson LLC's citizen suit was pending, the Cabinet approved Minor Revision #1, updating the surface ownership information for Tract 46, and Minor Revision #2, finding that the application contained sufficient documentation to satisfy the right of entry requirements of 405 Ky. Admin. Regs. 8:030 Sec. 4(2)(c) and 30 U.S.C. § 1260(b)(6)(C). On June 13, 2014, then District Judge Amul Thapar issued a preliminary injunction order in the citizen suit, finding that Johnson LLC had demonstrated a likelihood of success on the merits that 30 U.S.C. § 1260(b)(6)(A) required the consent of all surface owners. *M.L. Johnson Family Properties, LLC v. Jewell (Johnson I)*, 27 F. Supp. 3d 767, 773 (E.D. Ky), *vacated as moot*, No. 14-5867, Order, ECF No. 29-2 (6th Cir. Oct. 31, 2014). In compliance with the preliminary injunction, OSMRE conducted a federal inspection of Elkhorn's permit and, applying this Court's interpretation of 30 U.S.C. § 1260(b)(6)(A), found that Elkhorn's permit was non-compliant because Johnson LLC did not consent to mining. Elkhorn's alternative claim that its permit was valid under 30 U.S.C. § 1260(b)(6)(C), as approved by Minor Revision #2, was rejected as procedurally flawed due to the lack of adequate notice and opportunity to object. OSMRE concluded that Elkhorn lacked a valid permit and issued a cessation order.

Seeking to abate the cessation order, Elkhorn submitted (1) copies of the original severance, deed which did not expressly grant the right to surface mine, (2) chain of title documents, and (3) the Original and Amended Right of Entry Agreements. Elkhorn's application also cited to the Kentucky Court of Appeals decision in *Johnson*, 289 S.W.3d 216, holding that consent of one cotenant could satisfy the right of entry requirement. The Cabinet approved Minor Revision #3. Johnson LLC filed an objection with the Cabinet to the proposed revision, but did not pursue a state administrative appeal.

OSMRE determined that Minor Revision #3 abated the violations and moved to terminate the cessation order. The Hearings Division issued a decision upholding the issuance of the cessation order and granting OSMRE's motion to terminate the order. *Premier Elkhorn v. OSMRE*, NX-2014-01-R Consolidated (Dec. 19, 2014). Following an unsuccessful appeal to the Interior Board of Land Appeals ("IBLA") by Johnson LLC, OSMRE's Lexington Field Office issued the termination order. Johnson LLC filed an application for review of that order with the Hearings Division, which was heard by Administrative Law Judge ("ALJ") Harry C. Sweitzer. On October 30, 2015, the ALJ issued a decision upholding OSMRE's termination of the cessation order. Johnson LLC now appeals from that decision and has filed a motion for summary judgment. (DE 46). Defendant Ryan Zinke, Secretary of the Interior, and Defendant-Intervenor Elkhorn have filed responses in opposition and cross-motions for summary judgement. (DE 62, DE 63). All parties have filed replies (DE 68, DE 71, DE 75) and this matter is now ripe for a decision.

### III. Standard of Review

Johnson LLC seeks review of the ALJ's decision under SMCRA, 30 U.S.C. § 1276(a)(2), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-703. Because there are no factual disputes, this matter is appropriate for disposition on summary judgment. Fed. R. Civ. P. 56(a). ("The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). SMCRA limits this Court's review to whether the Secretary's action was arbitrary, capricious, or otherwise inconsistent with law. 30 U.S.C. 1276(a)(2); *see Drummond Coal Co. v. Hodel*, 796 F.2d 503, 504 n.1 (D.C. Cir. 1986) ("With an exception not here relevant, Section 1276(a)(2) of the SMCRA incorporates the arbitrary and capricious standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982).").

This Court reviews questions of law *de novo*, but, in doing so, "deference may be owed where the agency is reasonably interpreting the statutes it is charged with administering." *R/T/ 182, LLC v. F.A.A.*, 519 F.3d 307, 309 (6th Cir. 2008). If a statute is silent or ambiguous with respect to a specific issue, this Court must uphold the agency's interpretation if it is "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). An agency's interpretation of its own regulations are also owed deference by a reviewing court. *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997).

## IV. Analysis

Johnson LLC brings a number of challenges to the ALJ's decision upholding termination of the cessation order and allowing Elkhorn to surface mine Tract 46 pursuant to Minor Revision #3. For the reasons set forth below, the Court finds that the ALJ's decision was not arbitrary or capricious.

### A. Elkhorn has a valid right of entry based on Kentucky cotenancy law

OSMRE terminated the cessation order that blocked Elkhorn's mining of Tract 46 after the Kentucky Cabinet determined that Eklhorn had established a right of entry under 30 U.S.C. § 1260(b)(6)(C). That decision was upheld by an ALJ, who found that SMCRA and the analogous Kentucky regulations permitted consideration of all relevant state law, including the law of cotenancy. Johnson LLC argues that subsection (C) of § 1260(b)(6), and its implementing regulations, are narrower, allowing the regulatory authority to consider only

law interpreting the original severance instrument. As explained below, Johnson LLC's construction of the statute is mistaken. Both U.S.C. § 1260(b)(6)(C) and 405 KAR 8:030 Sec. 4(2)(c) permit consideration of all applicable state law, including Kentucky cotenancy law.

1. *SMCRA unambiguously permits a right of entry to be determined based on all relevant state law*

Determining whether SMCRA, and Kentucky's analogous regulation, grant Elkhorn a right of entry requires untangling the meaning of "the surface-subsurface legal relationship shall be determined in accordance with State law." 30 U.S.C. 1260(b)(6)(C). To do so, the Court must turn to the familiar two-step *Chevron* framework. 467 U.S. 837. *Chevron* obliges the Court to first ask whether "Congress has directly spoken to the precise question at issue." *Id.* at 843. If the statute is silent or ambiguous on the issue, the Court turns to step two and asks whether the agency's interpretation is "a permissible construction of the statute." *Id.*

At *Chevron* step one, as with any matter of statutory interpretation, the analysis begins with the text itself. If the statutory language is "unambiguous and the 'statutory scheme is coherent and consistent'" our inquiry ends. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)). The right of entry provision requires the surface-subsurface relationship to be "determined in accordance with State law." 30 U.S.C. 1260(b)(6)(C). The use of "state law" in this provision is clear: all state law that is relevant to determining the surface-subsurface relationship may be considered. Congress, could have easily chosen to specify a limited type or subject matter of relevant state law. They chose not to. Instead, they left "state law" unmodified. That phrase, standing alone, indicates a clear and unambiguous intent to encompass all forms of state law.

Johnson LLC argues that the text, purpose, and legislative history of the statute compel the Court to adopt its narrow reading of "state law." It claims the phrase "surface-subsurface relationship" limits the applicable state law to law interpreting the severance instrument.

Johnson LLC puts forth three textual arguments in support of this construction. First, it argues that any ambiguity in subsection (C)'s operative clause is resolved by its prefatory clause, which, it contends, limits subsection (C)'s applicability to instances where the "conveyance does not expressly grant the right to extract coal by surface mining methods." 30 U.S.C. § 1260(b)(6)(C). While a prefatory clause "may . . . resolve an ambiguity in the operative clause" its function is clarifying and it cannot "limit or expand the scope of the operative clause." *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). Subsection C's prefatory clause does not alter the meaning of "surface-subsurface legal relationship" in the operative clause. Instead, its role is to state the purpose of subsection (C) in the statute as an alternative method for establishing a right of entry where subsection (B) does not apply because the conveyance does not expressly grant a right of entry.[7]

Johnson LLC's second textual argument is that subsection (B) and (C), when harmonized, support its narrow reading of subsection (C). It frames subsection (B) as applying where the conveyance instrument is explicit in granting or denying the right of entry and subsection (C) as specifying the choice of law when the instrument is not explicit. Johnson LLC's framing of the subsections as operating in parallel is correct. But this parallelism does not narrow the meaning of "state law" in subsection (C) as Johnson LLC claims. While a permitee will only rely on subsection (C) when there is no consent by the surface owner and the conveyance is not explicit, it does not follow that subsection (C) limits state law to the law interpreting the conveyance instrument. Instead, the permitee may invoke state law to demonstrate that

---

[7] In its reply brief, Johnson LLC raises the argument that its construction of subsection (C) is analogous to the Supreme Court's interpretation of "retirement funds" in 11 U.S.C. § 522. *Clark v. Rameker*, 134 S. Ct. 2242 (2014). In that bankruptcy case, the Court found that the debtor's preferred construction would render a substantial portion of the text superfluous and inconsistent and that Congress could have achieved that result through a simpler wording. *Id.* at 2248. *Clark* is inapposite. The Court in *Clark* based its holding primarily on the ordinary meaning of "retirement funds," which was consistent with the creditors construction. *Id.* at 2247. Here, the ordinary meaning of state law—all relevant state law—is consistent with Elkhorn's construction of subsection (C), not Johnson LLC's narrower interpretation.

either his right of entry is implicit in the conveyance or that some other right of entry exists, such as a right under cotenancy law.

Johnson LLC's third textual argument relies on § 1260(b)(6)'s prefatory clause, which limits the subsections applicability to "cases where the private mineral estate has been severed from the private surface estate." 30 U.S.C. 1260(b)(6). This argument, like its first textual argument, seeks to imbue the prefatory clause with a limiting function that goes beyond its proper role. The function of § 1260(b)(6)'s prefatory clause is to make the subsection applicable in instances where there has been a severance, not to limit the scope of the operative clause of subsection (C).

Finally, all of Johnson LLC's textual arguments are weakened by the expectation of "a 'clear and manifest' statement from Congress to authorize an unprecedented intrusion into traditional state authority." *Rapanos v. United States*, 547 U.S. 715, 738 (2006) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544, (1994)). Johnson LLC's narrow reading of "state law," as its counsel stated at oral arguments, would mean that SMCRA overrides state property law. But subsection (C) does the opposite of overriding state law. Consistent with SMCRA's cooperative federalism scheme, it instructs the regulatory authority to look to state law where the conveyance does not provide an explicit right of entry. Had Congress intended to displace state cotenancy law, it could have clearly done so by adding limiting language before "state law." Because it choose not to, SMCRA should not be interpreted as preempting common law rights of entry. *See United States v. Bass*, 404 U.S. 336, 349 (1971) ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance.").

Johnson LLC also claims that the broad reading adopted by the ALJ frustrates the fundamental purpose of SMCRA. In enacting SMCRA, Congress identified thirteen purposes. 30 U.S.C. § 1202. In support of its narrow construction, Johnson LLC points to the statutes

second enumerated purpose of "assur[ing] that the rights of surface landowners and other persons with a legal interest in the land or appurtenances thereto are fully protected from [surface coal mining] operations." 30 U.S.C. § 1202(b). But neither the ALJ's broad interpretation nor Johnson LLC's narrow interpretation of state law differ in the amount of protection provided for "the rights of surface landowners." If state property law does not provide the surface owner a right to be free from mining operations, SMCRA's purpose is not frustrated. That is the case here. As discussed below, under Kentucky cotenancy law, Johnson LLC has no right as a cotenant to be free from surface mining operations where another cotenant has consented to surface mining. Johnson LLC may have an interest in preventing surface mining on Tract 46, but that is not equivalent to a right to be free from surface mining.

Finally, Johnson LLC turns to the lengthy legislative history of SMCRA in support of its narrow construction of § 1260(b)(6)(C). In its view, the legislative history reveals that subsection (C) was the result of a compromise between a full service owner consent requirement and a regime in which the right of entry was left entirely to state law. It primarily relies on a colloquy between Ohio Representative John Seiberling and House Committee on Interior and Insular Affairs Chairman Representative Morris Udall. In that colloquy, Representative Seiberling, who had offered the amendment that would become § 1260(b)(6) and only reluctantly agreed to include subsection (C), stated that he understood that subsection to "require a showing that there is a deed or other instrument of conveyance and that, under the applicable State law, it is construed to authorize surface mining." 123 Cong. Rec. 24419, 24424. Jul. 21, 1977. Chairman Udall stated that this interpretation of subsection C was correct. *Id.*

While the colloquy between Representative Seiberling and Chairman Udall is convincing evidence that those representatives understood subsection (C) to apply narrowly, it does not

warrant the Court adopting that construction for two reasons. First, as explained above, the text of subsection (C) is clear: the phrase "state law," without limiting language, clearly applies broadly to include all forms of state law. The Court may "not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147 (1994); *see United States v. Cain*, 583 F.3d 408, 418-19 (6th Cir. 2009) ("'[T]he statements of individual legislators . . . during the course of the enactment process' may not 'expand[ ] or contract [ ]' legislation when 'the statutory text adopted by both Houses of Congress and submitted to the President' is 'unambiguous.'") (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98–99 (1991)). Accordingly, legislative history is not relevant to the Court's interpretation of § 1260(b)(6)(C). Second, even if the Court were to consider SMCRA's legislative history to be relevant, the colloquy relied on by Johnson LLC is not the most probative legislative history available on the issue. Instead, the House and Senate Conference Committee Report provides a better guide as to Congressional intent. *See Schmitt v. City of Detroit*, 395 F.3d 327, 330 n.2 (6th Cir. 2005) (noting that, when resorting to legislative history, courts should not go beyond committee reports). While the House bill required landowner consent for surface mining, expressly or through the conveyance, the Senate bill contained no such consent requirement. The Conference Report explained that § 1260(b)(6) sought to resolve the matter by:

> [P]roviding that in those cases in which there is no written consent of the surface owner or no express coverage of the right to mine coal by surface methods in the relevant legal instruments that (1) the determination of whether or not the private mineral estate owner or a successor-in-interest has the right to mine the coal by surface methods *shall be made in accordance with applicable state law*

H.R. Rep. No. 95-493, at 106 (1977) (Conf. Rep.) (emphasis added). Like the text of the statute itself, the Conference Report does not place any limit on the type or subject matter of applicable state law. The Conference Report goes on to state that, in such cases, "the applicant would be able to furnish the regulatory authority with *any appropriate evidence* of

its right to engage in surface mining." *Id.* (emphasis added) While the Report indicates that such evidence would "includ[e] the original severance instrument and legal authority under applicable State law that the language in such instrument gives it the right to mine coal," *id.*, that example is not exhaustive. *See Include*, *Black's Law Dictionary* (10th ed. 2014) ("The participle *including* typically indicates a partial list."); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 536-37 (7th Cir. 2006) ("Use of the term 'including,' followed by a list . . . does not purport to limit . . . ."); *see also Trs. of Laborers Pension Tr. Fund-Detroit & Vicinity v. Metallizers of Mid-America, Inc.*, No. 13-14874, 2014 WL 4059864, at *4 (E.D. Mich. Aug. 14, 2014) (determining that the word "including" in a collective bargaining agreement indicated a partial list). Thus, the most persuasive legislative history supports the plain meaning of the statutory text: state law in § 1260(b)(6)(C) includes all relevant state law and is not limited to law interpreting the conveyance instrument.[8]

### 2. *Kentucky's regulatory analogue is substantively identical to SMCRA*

Compliance with SMCRA alone is not enough for Elkhorn to establish a right of entry. Under SMCRA's "cooperative federalism" regime, Elkhorn's permit must also comply with Kentucky's regulations. When Kentucky Cabinet approved Elkhorn's permit application, the

---

[8] Alternatively, even if this Court were to find that Johnson LLC's arguments create an ambiguity as to the scope of "state law" in § 1260(b)(6)(C), this Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the . . . agency." *Chevron*, 467 U.S. at 844. For the reasons discussed above, the ALJ's construction is reasonable and would also be affirmed under *Chevron* step two. Johnson LLC argues that *Chevron* should not apply because the Secretary has no expertise on when deference should be given to state law. It cites *Pak v. Reno*, 196 F.3d 666 (6th Cir. 1999), for the proposition there is no delegation where the issue does not involve agency expertise. *Id.* at 675 n.10. That argument is unavailing for two reasons. First, in *Pak*, the Sixth Circuit noted only the uncertainty about the application of *Chevron* to pure questions of statutory interpretation. It did not hold that *Chevron* does not apply. *Id.* ("It is uncertain whether *Chevron* applies in this case, even if there had been an absence of an expression of congressional intent."). The reason the court did not to defer to the agency interpretation was because Congressional intent on the issue was clear. *Id.* at 675 ("[W]e do not believe that there is an absence of an expression of congressional intent in this case. Accordingly, deference to the Attorney General's opinion is not warranted with respect to this issue."). Second, the court in *Pak* only suggested that determining a statute's temporal reach may not require agency expertise. *Id.* The ALJ's decision here concerned which state law applies under SMCRA, not SMCRA's temporal reach.

text of the Kentucky regulation provided that, "if the conveyance does not expressly grant the right to extract the coal by surface mining methods," the application must contain:

> [A] copy of the original instrument of severance upon which the applicant bases his right to extract coal by surface mining methods and documentation that under applicable state law the applicant has the legal authority to extract the coal by those methods.

405 Ky. Admin. Regs. 8:030 Sec. 4(2)(c). Elkhorn submitted the severance deed, which did not provide a right to surface mine, and the right of entry agreements executed by PLLC. Johnson LLC argues that the Kentucky Cabinet's approval of Elkhorn's application, and the Secretary's subsequent ratification of that decision, was inconsistent with 405 Ky. Admin. Regs. 8:030 Sec. 4(2)(c). It reads the first clause of Kentucky's regulation as requiring that the severance instrument provide the right of entry.

At first glance, this argument has textual merit. The federal regulation that implements 30 U.S.C. § 1260(b)(6)(C) more closely mirrors the statute, requiring only "documentation that under applicable State law, the applicant has the legal authority to extract the coal." 30 C.F.R. § 778.15(b)(3). The addition of the first clause in the Kentucky regulation, therefore, seems to suggest that Kentucky sought to require the severance instrument to provide the right of entry. Looking closer, however, reveals that the Kentucky regulation, while textually different, is substantively identical to SMCRA and the federal regulation. It merely imposes an additional procedural requirement that the applicant submit the severance instrument.

First, Johnson LLC's reading would make the second clause of the Kentucky regulation mere surplusage. If the original severance instrument must be the basis for the right of entry, then there is no need to provide "documentation" of the right of entry under state law as required by the second clause. Second, the state regulation, like its federal counterparts, does not contain express limiting language on what state law is "applicable." Third, OSMRE has consistently interpreted the regulation as being "substantively identical to the Federal rule."

59 Fed. Reg. 27235, 27236 (May 26, 1994) (Director's finding #4). And, most importantly, the Kentucky regulation could not, under Kentucky law, be more stringent than the federal law or regulation. While Kentucky law provides administrative agencies with the power to promulgate implementing regulations when required by federal law, it requires that those "administrative regulations shall be no more stringent than the federal law or regulations." Ky. Rev. Stat. § 13A.120(1)(a). The Kentucky legislature has explicitly applied that prohibition to regulations implementing SMCRA. Ky. Rev. Stat. § 350.028(5) ("Administrative regulations shall be no more stringent than required by [SMCRA]."); *see also* Ky. Rev. Stat. § 350.465(2) ("The implementation of this section shall contain procedures similar to [SMCRA], and shall require surface coal mining operation performance standards no more stringent than provided for in that act."); *Laurel Mountain Res v. Ky. Cabinet*, 360 S.W.3d 791, 799 (Ky. App. 2012) (declaring a Kentucky regulatory provision more stringent than SMCRA null, void, and unenforceable). Accordingly, for these reasons, the Kentucky Cabinet and ALJ were correct to interpret 30 C.F.R. § 778.15(b)(3) as substantively identical to 30 U.S.C. § 1260(b)(6)(C) and to find that Elkhorn satisfied the regulation through submission of Minor Revision #3.

### 3. Kentucky state law permits a cotenant to consent to surface mining

Having determined that 30 U.S.C. § 1260(b)(6)(C) applies broadly to allow a right of entry on the basis of any type of state law, the question becomes whether Kentucky law gives Elkhorn a right of entry to surface mine Tract 46. The Kentucky Cabinet approved Elkhorn's permit on the basis that Kentucky cotenancy law allows a single cotenant to consent to surface mining over the objection of other tenants in common. That decision was consistent with clearly established Kentucky law. The Kentucky Court of Appeals held that "a cotenant had the right to begin strip mining operations on the subject property despite objections from another cotenant." *Johnson v. Envtl. & Pub. Prot. Cabinet*, 289 S.W.3d at 220. That decision

was based on the common law principle of cotenancy law, followed by Kentucky, that a "cotenant may use and enjoy a common estate in real property in the same manner as if he or she were the sole owner." *Id.* at 219 (citing *York v. Warren Oil & Gas Co.*, 191 Ky. 157 (1921)); *see Taylor v. Bradford*, 244 S.W.2d 482, 484 (Ky. 1951) ("[A] tenant in common without the consent of his cotenant, has the right to develop and operate the common property for oil and gas and for that purpose may drill wells and erect necessary plants.") (quoting *Praire Oil & Gas Co. v. Allen*, 2 F.2d 566, 571 (8th Cir. 1924)); *New Domain Oil & Gas Co. v. Mckinney*, 221 S.W. 245, 250 (Ky. Ct. App. 1920) ("The right of one cotenant to himself occupy and operate the joint property also prevails in the case of a joint ownership in minerals."). The decision also concluded that Kentucky's Broad Form Deed Amendment, Ky. Const. §19(2), "did not change in any fundamental way the long-standing law of cotenancy." *Johnson v. Envt. & Pub. Prot. Cabinet*, 289 S.W.3d at 221. Where, as here, a right of entry is based on the consent of a cotenant, "it is the terms of the lease itself that give [the claimant] the right to mine coal on the property in question, not an application of a broad form deed." *Id.*

Johnson LLC does not claim that *Johnson v. Envtl. & Pub. Prot. Cabinet* is distinguishable. Instead, it argues that the decision was wrongly decided and that this Court should not rely on it as a state law basis for determining whether a right to conduct surface mining exists. This argument fails for two reasons. First, it cannot be arbitrary or capricious for the ALJ to have relied on a state appellate court decision interpreting the state law at issue. Federal courts frequently construe state law by applying decisions of state courts. *See, e.g.*, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (requiring federal courts to apply state law in diversity of citizenship cases); *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) ("In construing questions of state law, the federal court must apply state law in

accordance with the controlling decisions of the highest court of the state. If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts . . . in making this determination.") (internal citations omitted). It is not arbitrary or capricious for an administrative agency to do the same. Second, Congress has plainly manifested an intent, consistent with SMCRA's cooperative federalism regime, to incorporate state law into 30 U.S.C. § 1260(b)(6)(C). This Court is not in a position to overrule the Kentucky Court of Appeals decision in *Johnson v. Envtl. & Pub. Prot. Cabinet* nor should it apply its own interpretation of Kentucky law. The Kentucky Court of Appeals issued a thorough opinion reconciling Kentucky's common law of cotenancy with the state's Broad Form Deed Amendment. Property law is traditionally within the domain of states. *See Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law.") (quoting *McKenzie v. Irving Tr. Co.,* 323 U.S. 365, 370 (1945)). If Johnson LLC disagrees with Kentucky Court of Appeal's interpretation of state property law, the proper forum to correct that decision is the Kentucky Supreme Court, not a federal administrative agency or federal district court. *See Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) ("Federal district courts do not stand as appellate courts for decisions of state courts.") *(citing Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)).

*B. Neither the Kentucky Cabinet nor the Secretary adjudicated a property rights dispute*

SMCRA, and its Kentucky analogue, contains an important limitation on when the regulatory authority may issue a permit under 30 U.S.C. § 1260(b)(6)(C). SMCRA states "[t]hat nothing in this chapter shall be construed to authorize the regulatory authority to adjudicate property rights disputes." *Id.*; *see* 405 Ky. Admin. Regs. 8:030 § 4(3) ("Nothing in this section shall be construed to authorize the cabinet to adjudicate property rights

disputes.") Johnson LLC argues that, in contravention of this proviso, the Kentucky Cabinet approved Minor Revision #3 and OSMRE terminated the cessation order. It claims that the ongoing dispute over whether Premier Elkhorn had a right to enter Tract 46 to extract coal by surface mining methods constituted a property rights dispute. Because of the existence of this dispute, it interprets SMCRA as placing the burden on Elkhorn to obtain a final and unappealable resolution of the dispute before the regulatory authority could approve the application. This is an incorrect reading of the statute. Neither the Kentucky Cabinet nor OSMRE adjudicated a property rights dispute.

First, Johnson LLC's position that a final and unappealable judicial determination was required before a permit could be issued is unsupported by the text of SMCRA. In prohibiting adjudication of property rights disputes, the proviso's text contains nothing that suggests a final and unappealable judicial determination concerning an applicant's property rights is required. Finding little support in the text of subsection (C), Johnson LLC again turns to the legislative history. The Conference Committee Report provided that:

> [I]n those cases in which there is no written consent of the surface owner or no express coverage of the right to mine coal by surface methods in the relevant legal instruments that (1) the determination of whether or not the private mineral estate owner or a successor-in-interest has the right to mine the coal by surface methods shall be made in accordance with applicable state law, and (2) jurisdiction to make that determination under applicable State law shall remain in the body – most probably the State courts – given that jurisdiction by the state in question.

H.R. Rep. No. 95-493, at 106. A requirement of a final and unappealable judicial determination does not follow from this language. When the Cabinet made the prima facie determination that Elkhorn had a right of entry it relied on the decision in *Johnson v. Envtl. & Pub. Prot. Cabinet*. Jurisdiction to make the decision of whether a right of entry existed remained, as intended by Congress, in Kentucky state court.

Second, the dispute between Johnson LLC, Elkhorn, and the Secretary does not concern which parties have "a right to specific property, whether tangible or intangible." *Property*

*Right*, *Black's Law Dictionary*, (10th ed. 2014). Instead, the dispute primarily concerns the scope of the phrase "state law" in Subsection (C). Once the regulatory authorities correctly determined that SMCRA encompasses all relevant state law, Kentucky state law provided a clear answer as to whether cotenancy law or the Broad Form Deed Amendment applied. The only dispute before the regulatory authorities concerned the proper interpretation of SMCRA and its analogous regulation. It did not require any analysis or consideration of property law.

Johnson LLC also argues that the citizen suit it filed in this Court was a property dispute, and its pendency required the regulatory authority to refrain from determining if Elkhorn had a right of entry to surface mine. For similar reasons, this argument fails. SMCRA's citizen suit provision authorizes any adversely affected person to bring a civil action against the Secretary to "compel compliance . . . where there is alleged a failure of the Secretary . . . to perform any act or duty under this chapter which is not discretionary." 30 U.S.C. § 1270(a)(2). Johnson LLC's complaint alleged that Elkhorn's permit applications did not contain certain information required by SMCRA. While the allegations in Johnson LLC's citizen suit may touch on property rights concerns, it is not a property rights dispute. Johnson LLC's citizen suit primarily challenges the Cabinet's construction of 30 U.S.C. § 1260(b)(6)(A). Like this case, the citizen suit concerns the proper interpretation of SMCRA's right of entry provisions, not state property law.

Johnson LLC argues that case law and administrative decisions supports its position that Kentucky and the Secretary adjudicated a property rights dispute. Those cases, however, are distinguishable. In *Ky. So. Coal Corp v. Ky. Energy & Env't Cabinet*, 396 S.W.3d 804 (2013), the Kentucky Supreme Court held that a bona fide property rights dispute existed where the lease issued for surface mining had expired. The Kentucky Supreme Court affirmed the intermediate court of appeal's ruling that "[t]he burden is on the permit applicant to resolve such issues prior to applying for, or obtaining, a permit. Absent a valid lease, deed, contract

with the owners of the real estate, or judgment from a court of competent jurisdiction, the Cabinet has no basis for finding . . . a legal right to mine this property." *Ky. So. Coal Corp v. Ky. Energy and Env't Cabinet*, No. 2008-CA-002229-MR, 2009 WL 4723197, at *4 (Ky. Ct. App. Dec. 11, 2009). Here, however, Elkhorn has a right of entry agreement with PLLC. There is no dispute as to the validity of that agreement. And because *Johnson v. Envtl. & Pub. Prot. Cabinet* clearly states that consent of one cotenant creates a right of entry to surface mine, Elkhorn was not required to obtain a favorable court judgement prior to approval of its application. The regulatory authority could rely on the valid right of entry agreement and the clearly established Kentucky law in determining the surface-subsurface legal relationship.

Johnson LLC also points to IBLA's decision in *Marion Taylor*, 125 I.B.L.A. 271 (1993), *vacated*, *Coal-Mac, Inc. v. Babbitt*, Case No. 7:93-cv-00117- JMH, ECF No. 48 (E.D. Ky. Aug. 9, 1995). In *Taylor*, IBLA found that a property rights dispute existed because there was a pending state court action over whether a reservation of mineral rights in a deed allowed for surface mining. *Id.* at 276 ("Litigation was then pending . . . to decide whether the reservation in the December 1971 deed . . . actually permitted him to authorize another to mine the subject land by surface means."). This constituted a property rights dispute because the disagreement concerned the interpretation of the phrase "mining rights" in the deed. In contrast, there is no controversy in this case as to what rights ML Johnson's heirs assigned to PLLC or what right PLLC intended to convey to Elkhorn in the right of entry agreement.

Other cases in which Courts and IBLA have addressed the meaning of property rights have interpreted the phrase narrowly. In an order issued by Judge William O. Bertelsman, this Court interpreted subsection (C)'s proviso to mean "only that the regulatory agency would not have power to determine whether any given conveyance had been obtained by

fraud, whether the consent obtained was signed by the proper heirs to a particular tract of land, whether there was a boundary line or other dispute concerning the realty' description, and other such individualized matters." *Akers v. Baldwin*, No. 84-88, Findings of Fact and Conclusions of Law and Order, at 11-12 (E.D. Ky. Feb. 28, 1985) (finding that construing a deed in light of state law did not constitute adjudication of a property rights dispute); *see also Akers v. Bradley*, No. 84-88, Op., Order and J., at 2 (E.D. Ky. June 20, 1988) ("[T]he state defendants are obligated to make a bona fide, prima facie determination whether the language of the legal instrument is construed under state law to authorize surface mining."). The Secretary has consistently interpreted "property rights dispute" as limited to the types of actions identified by the Court in *Akers. See* 64 Fed. Reg. 70,766 (Dec. 17, 1999) (interpreting SMCRA as *not* "requiring deferral of a decision if there is only a mere allegation of a property rights dispute" in reliance on *Akers*);[9] *Foster E. Sword*, 138 IBLA 74, 81 (Feb. 3, 1997). The Kentucky Court of Appeals, IBLA, and the Kentucky Cabinet have all identified disputes of the type described in *Akers* as property disputes. *See Johnson v. Envtl. & Pub. Prot. Cabinet*, 289 S.W.3d 216, 222 (holding that an "adjudication of claims of waste or property damage among cotenants" was a property rights dispute); *Foster E. Sword*, 138 IBLA 74, 81 (Feb. 3, 1997) (refusing to compel a permitee to conduct a survey to locate private property lines because it constituted a property rights dispute); *Paul F. Kuhn*, 120 IBLA 1, 9 (July 3, 1991) (describing a dispute over property boundaries in a permit application as a property rights dispute); *Benny Campbell v. Envtl. & Pub. Prot. Cabinet*, 2008 WL 2582652, at *9 (Ky. Envtl. & Pub. Prot. Cabinet, June 2, 2008) ("[C]ontentions regarding whether the

---

[9] This interpretation took place in OSMRE's Valid Existing Rights ("VER") rulemaking context and it is therefore not binding on the agency in this matter. The VER preamble is merely evidence of the consistency of OSMRE's interpretation of "property rights dispute."

deed is valid or its legal import are basically a property dispute.").[10] None of these cases resemble the challenges brought before the Secretary or in Johnson LLC's citizen suit. And Johnson LLC has not identified any judicial or agency decision in which a dispute similar to its own was deemed a property rights dispute.

Finally, Johnson LLC's position presents two practical problems for resolution of this case. First, Johnson LLC argues that the issues raised before the Secretary and in its citizen suit are property rights disputes that should be adjudicated by a Kentucky state court. But those disputes primarily concern the interpretation of SMCRA, not state property law. The final authority on the interpretation of SMCRA are the federal courts. If the Court were to require Elkhorn to obtain a state court judgment, that decision would merely provide an interpretation of SMCRA subject to ultimate review in federal court. In contrast, if the dispute were a bona fide property dispute, such as whether Elkhorn's right of entry agreement was valid, Kentucky state courts would provide the final determination. Second, if this Court sent Elkhorn to state court to obtain a declaratory judgment, Kentucky's lower state courts would be bound by the decision in *Johnson v. Envtl. & Pub. Prot. Cabinet*, and would return to the regulatory authority with a final judicial determination that applies Kentucky state law identically to the prima facie determination made by the Kentucky Cabinet and Secretary. Thus, a requirement of a final and unappealable judicial determination does nothing except delay the resolution of this litigation.

---

[10] In a footnote, Johnson LLC suggests that, under the presumption of consistent usage, the use of "property title disputes" in 30 U.S.C. § 1257 may indicate that Congress intended "property rights" in 30 U.S.C. § 1260(b)(6)(C) to be broader. But the primary definition of "title" is "the union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself." *Title, Black's Law Dictionary*, (10th ed. 2014). Thus, the best reading of SMCRA is that "property rights dispute" and "property title disputes" are synonymous.

*C.  Reclamation Advisory Memorandum #159 did not modify state law*

The Kentucky Cabinet relied on Reclamation Advisory Memorandum ("RAM") #159 in approving Minor Revision #3. RAM #159 was issued in response to Judge Thapar's order in *Johnson I* granting Johnson LLC a preliminary injunction. RAM #159 stated, as a result of the Court's order, that "the Cabinet intends to find [405 Ky Admin. Regs.] 8:030 Sec. 4(2)(c) satisfied if the additional documentation consists of the consent of less than all the cotenants because state case law has so held." Kentucky Energy and Environment Cabinet Department for Natural Resources, Reclamation Advisory Memorandum (RAM) #159 (June 27, 2014).

The Cabinet did not seek approval from the Secretary before issuing RAM #159 or applying it to Minor Revision #3. Johnson LLC argues that RAM #159 constitutes a significant change to Kentucky's approved regulatory program and, because it was not approved by the Secretary, approval of Minor Revision #3 violated 30 C.F.R. § 732.15(g). In his written decision, the ALJ rejected this argument, finding that "while RAM #159 expressed an intention to follow a different right of entry subsection in response to the District Court's findings, the document did not purport to change existing State law. Consequently, RAM #159 did not violate the amendment procedures under 30 C.F.R. § 732.17." (Administrative Record ("AR") 1171).

The Secretary's decision is correct—RAM #159 constituted a guidance document that did not modify the Kentucky state program and is therefore exempt from SMCRA's formal amendment process. A RAM is intended to be "an open correspondence from the commissioner of the Department for Natural Resources (DNR) to operators and other interested persons, that provides information related to DNR's surface mining regulatory program." *Reclamation Advisory Memoranda*, Division of Mine Permits, http://minepermits.ky.gov/Pages/RAMs.aspx (last visited Mar. 21, 2018). As such, RAM #159 merely "establish[es] guidelines" for how the Cabinet will evaluate right of entry permits.

RAM #159, at 1. It does not bind the regulatory authority, but rather seeks "cooperation in submitting the necessary documentation" from permit applicants. RAM #159, at 3. Because RAM #159 is a guidance document, it lacks the force of law and could not change Kentucky laws or regulations. Instead, RAM #159 resembles an interpretative rule or general statement of policy that, under the Administrative Procedure Act, are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers" and "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203–04 (2015) (internal quotation marks omitted) (quoting *Shalala v. Guernsey Memorial Hosp.,* 514 U.S. 87, 99 (1995)); *see S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 972 (6th Cir. 2016) ("Internal operating manuals . . . do not carry the force of law, bind the agency, or confer rights.") (quoting *Reich v. Manganas*, 70 F.3d 434, 437 (6th Cir. 1995)).

Johnson LLC contends that, while RAM #159 did not itself purport to modify Kentucky's approved program, approval of Minor Revision #3 pursuant to RAM #159 did affect an unapproved change to Kentucky's state program. It claims that RAM #159 rewrote 405 Ky Admin. Regs. 8:030 Sec. 4(2)(C) to require that applicants submit only "copies of the original severance documents and documentation to demonstrate that under Kentucky state law it has the right to mine by those methods," RAM #159, at 2, and removed the requirement that the applicant base its right to extract coal on the severance instrument. This argument misses the mark. Johnson LLC is correct that the text of Kentucky's subsection (C) and RAM #159's interpretation of that language differ. But, as explained above, 405 Ky. Admin. Regs. 8:030 Sec. 4(2)(C) does not require applicants to base their right of entry on the severance instrument. It only requires applicants to submit the original severance instrument. Thus, RAM #159, and its application to Minor Revision #3, was consistent with 405 Ky. Admin.

Regs. 8:030 Sec. 4(2)(C) and did not constitute an unauthorized amendment to the state regulatory program.

### D. Elkhorn's failure to disclose pending litigation was harmless error

SMCRA requires that each permit applicant file a statement of whether the applicant's right of entry to surface mine "is the subject of pending court litigation." 30 U.S.C. § 1257(b)(9); *see also* 405 Ky. Admin. Regs. 8:030 Sec. 4(1). An application may only be approved if the regulatory authority finds that "the permit application is accurate and complete and that all requirements of the Act and the State or Federal program have been complied with." 30 U.S.C. § 1260(b)(1); *see also* Ky. Rev. Stat. 350.060(2). When Elkhorn submitted its permit application to commence surface mining on Tract 46, Johnson LLC's citizen suit was, and still is, pending before this Court. In its permit application, however, Elkhorn answered "N/A" to item 9.8, which asks: "Are any rights to enter and mine the area, as claimed by the applicant, subject to any pending litigation?" (AR 0825-1642).

Johnson LLC argues that Elkhorn's failure to disclose the pending citizen suit made its application noncompliant with 30 U.S.C. § 1257(b)(9) and that, as a result, Kentucky had a non-discretionary duty to withhold the permit under 30 U.S.C. § 1260(b)(1). Elkhorn's omission, however, constitutes harmless error. The requirement that permit applicants disclose pending litigation serves the purpose of assisting the regulatory authority from improperly adjudicating a property rights dispute. The ALJ found, and Johnson LLC concedes, that "all parties, including the Kentucky Cabinet, were well-aware of the prior District Court proceedings . . . ." (AR 1326). Thus, the Kentucky Cabinet and the Secretary had the opportunity to consider whether Johnson LLC's citizen suit constituted a property rights dispute. The APA instructs this Court, in conducting its review of the Secretary's decision, that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706; *see Sierra Club v. Slater*, 120 F.3d 623, 637 (6th Cir. 1997) ("[A] harmless-error rule [applies] to

APA cases, such that a mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination.") (citing *Blackman v. Busey,* 938 F.2d 659, 664 (6th Cir. 1991)). Because the regulatory authorities were aware of the pending litigation, Johnson LLC has not shown that Elkhorn's violation of 30 U.S.C. § 1257(b)(9) was prejudicial. Therefore, that violation cannot serve as a basis to invalidate the decision.

### V. Conclusion

Because the ALJ's decision upholding OSMRE's termination of the cessation order was not arbitrary or capricious, the Court hereby **ORDERS**:

1. Plaintiff Johnson LLC's Motion for Summary Judgment (DE 46) is **DENIED**;

2. the decision of the United States Department of the Interior Office of Hearings and Appeals, (AR 1149-1177), is **AFFIRMED**;

3. Defendant Secretary of the Interior Ryan Zinke's Cross-Motion for Summary Judgment (DE 62) is **GRANTED**;

4. Defendant-Intervenor Premier Elkhorn Coal LLC's Cross-Motion for Summary Judgment (DE 63) is **GRANTED**; and

5. a judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated March 21, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY